**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Marcia S. Krieger**

Civil Action No. 18-cv-01189-MSK

PATRICIA BARBER,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER REVERSING AND REMANDING**
**THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(# 1)**, the Plaintiff's Opening Brief **(# 15)**, the Defendant's Response **(# 16)**, and the Plaintiff's Reply **(#17)**. For the following reasons, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

## I.   JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.   BACKGROUND

**A.   Procedural History**

Plaintiff Patricia Barber ("Ms. Barber") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying both her claim for disability insurance benefits ("DIB") and application for supplemental security income ("SSI") under the Social

Security Act.  In October 2011, Ms. Barber filed for DIB, claiming she became disabled as of August 16, 2010.  (**# 11-5 at 109; # 11-13 at 598**).  In July 2012, Ms. Barber filed for SSI. (**#11-5 at 136**).  Following an initial hearing before an Administrative Law Judge ("ALJ"), Ms. Barber received an unfavorable decision in January 2013.  (**# 11-2 at 15-18**).  Ms. Barber appealed that decision to this Court, where it was reversed and remanded for a new hearing.[1] (**#11-14 at 662-78**).  In March 2016, Ms. Barber received a new hearing before an ALJ ("remand hearing"), which again resulted in an unfavorable decision ("Decision").  (**# 11-13 at 593-96**).  Ms. Barber appealed that Decision to the Appeals Council.  However, on April 4, 2018, the Appeals Counsel denied her Request for Review.  (**# 11-12 at 586-92**).  Ms. Barber now appeals the final agency action to this Court.

**B.  Factual Background**

The Court summarizes only the medical evidence relevant to its decision.  Here, the dispositive issue concerns the weight given to the treating physician's 2016 opinion as to Ms. Barber's restrictions which considered her new diagnosis of muscular dystrophy and related non-epileptic seizures.  At the time of her alleged onset of disability, Ms. Barber was 48 years old. However, at the time of the remand hearing, she was 54 years old, which is categorized as "closely approaching advanced age."  (**# 11-13 at 606**).  Ms. Barber has a high school education and was previously employed as an adjustment clerk, bookkeeper, and teacher's aide. (**# 11-13 at 606**).

---

[1] The District Court found the ALJ erred in his analysis of what weight to afford Dr. Murillo's opinion as a treating physician and his failure to address Dr. Tendler's opinion.  (**# 11-14 at 678**).

In August 2010, Ms. Barber was hospitalized for a seizure with no clear etiology. (**# 11-8 at 290-91**). In July 2011, despite undergoing a treatment program for epilepsy, Ms. Barber reported having continued seizures that were intensifying. (**# 11-8 at 496-98**). Ms. Barber underwent EEG and CT testing, which revealed the seizures were likely not caused by epilepsy ("definite epileptiform abnormalities") or other "intracranial abnormalit[ies]." (**# 11-18 at 845, 878**).

In June 2012, Sergio Murillo, M.D. began treating Ms. Barber for her "non epilipteic [sic] seizures" among other conditions. (**# 11-11 at 548-49**). On August 23, 2012, Dr. Murillo issued a "Seizures Medical Source Statement" noting Ms. Barber was having 20 seizures per month with about one-minute warning before the onset of an impending seizure. (**# 11-11 at 560-63**). Dr. Murillo opined that Ms. Barber's seizures were "non-convulsive" and caused a loss of consciousness. Migraine headaches, short attention span, and memory problems accompanied the seizures. (**# 11-11 at 560, 563**). Following a seizure, Ms. Barber experienced confusion, severe headaches, muscle strain, irritability, exhaustion, difficulties communicating, and disorientation. (**# 11-11 at 561**). Due to the seizures and the after-effects, Dr. Murillo opined that Ms. Barber was incapable of even "low stress" work and was unable to "concentrate, drive, operate machinery, cook or be in public." (**# 11-11 at 561**). As to Ms. Barber's limitations, Dr. Murillo opined that she could sit for four hours with a 10-20 minute break, stand less than two hours in an eight-hour work day, lift 20 pounds occasionally, and could not kneel or work at a high altitude or at "heights." (**# 11-11 at 561-63**). Dr. Murillo opined that Ms. Barber's impairments would cause her both "good days" and "bad days," and that she would likely miss "more than four days per month" from full time work. (**# 11-11 at 563**).

In July 2012, Michael Greenberg, M.D., an agency non-examining physician, completed a Case Analysis. **(# 11-11 at 533)**. After reviewing Ms. Barber's records and EEG test results, he concluded there was insufficient evidence "to establish ongoing non-epileptic seizures." **(#11-11 at 533)**.

Following the initial 2013 hearing before the ALJ, Dr. Murillo continued treating Ms. Barber and recommended she undergo a muscle biopsy test to assess her continued complaints of muscle cramping and spasms. Based on his examinations spanning several years, Dr. Murillo suspected that Ms. Barber "may actually have a distal free [muscular disorder] [r]ather than a seizure disorder." **(# 11-21 at 1234-37)**. In May 2014, Gary Edward Lane, M.D. performed the muscle biopsy on Ms. Barber. **(# 11-21 at 1202-03)**. On January 15, 2016, Dr. Murillo saw Ms. Barber for a "follow-up after [the] muscle biopsy" and noted that he had "some answers to her case." **(# 11-21 at 1107)**. The muscle biopsy revealed Ms. Barber had muscular dystrophy, and Dr. Murillo opined that her seizures were related to this diagnosis. Dr. Murillo found Ms. Barber "has tonic clonic modular activity to the part of muscular claudication presenting with 'seizure' like pattern," which helps to "explain the symptoms and problems Ms. Barber has been having since August 2010[.]" **(# 11-21 at 1229)**. In February 2016, Dr. Murillo completed an updated residual functional capacity ("RFC") assessment based on Ms. Barber's new diagnosis of muscular dystrophy and related non-epileptic seizures ("2016 opinion"). **(# 11-21 at 1229-31)**. He opined Ms. Barber could not: lift more than 20 pounds; sit more than two hours per work day; and be on her feet for more than .5 hours per work day. Dr. Murillo also limited Ms. Barber's reaching, handling, and fingering to rarely and found that her "condition interfere[d] with her ability to remember instructions and to focus and concentrate on tasks[.]" **(# 11-21 at**

**1230-31)**.  Dr. Murillo ultimately found Ms. Barber unable to do any full time work.  **(# 11-21 at 1231)**.

C.   **The ALJ's 2016 Decision**

In June 2016, the ALJ issued a Decision unfavorable to Ms. Barber.  At step one, the ALJ found she had not engaged in substantial gainful activity since August 16, 2010.  **(# 11-13 at 598)**.  At step two, the ALJ found Ms. Barber had the following severe impairments: seizure disorder, obesity, lumbar spine degeneration, and muscular dystrophy.  **(# 11-13 at 598)**.  At step three, the ALJ found Ms. Barber did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  **(# 11-13 at 600-01)**.  The ALJ further found that Ms. Barber had the RFC to perform light work[2] with the following limitations: no work at unprotected heights, no hazardous work areas, no moving machinery, and no complex tasks as defined as SVP 2 or less.  **(# 11-13 at 601)**.  At step four, the ALJ found Ms. Barber was unable to perform any of her past relevant work.  **(# 11-13 at 606)**.  At step five, the ALJ concluded that, considering Ms. Barber's age, education, work experience, and RFC, she could perform the following jobs in the national economy: small product assembler, cafeteria attendant, and power screw driver operator.  **(# 11-13 at 606-07)**.  In crafting Ms. Barber's RFC, the ALJ gave little weight to Dr. Murillo's opinion and little weight to Dr. Greenberg's opinion.  **(# 11-13 at 605)**.

### III.   STANDARD OF REVIEW

Though the Court's review is *de novo*, the Court must uphold the Commissioner's

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

## IV. DISCUSSION

Ms. Barber asserts two issues in her appeal. First, she contends that the ALJ's Decision did not state valid reasons for rejecting treating physician Dr. Murillo's 2016 RFC opinion, which was rendered after additional medical testing revealed Ms. Barber had muscular dystrophy and no other medical professional issued a conflicting opinion of physical restrictions.[3] Second, Ms. Barber contends the ALJ's Decision failed to assess the testimony of a lay witness. Because the first argument is dispositive and requires remand, the Court will focus on it.

A treating physician's opinion is generally entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Romo v. Commissioner*, 748 Fed. Appx. 182, (10th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2));[4] *Pisciotta v. Astrue*,

---

[3] Ms. Barber does not challenge the Decision's assessment of Dr. Murillo's 2012 opinion.

[4] Pursuant to a change in the Social Security Administration's regulations, effective March 27, 2017, treating physician opinions will no longer be given controlling weight. However, the prior rule remains applicable to claims—like Ms. Barber's—filed before that date. Rescission of Social Security Rulings 96–2P, 96–5P, and 06–3P, 2017 WL 3928298, at *1 (2017).

500 F.3d 1074, 1077 (10th Cir. 2007). However, even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference, and the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotations omitted). In applying these factors, the ALJ must make findings and reasoning sufficiently specific so the weight given is clear to subsequent reviewers. *Id.*

Here, the ALJ's Decision determined that Dr. Murillo's 2016 opinion was not entitled to controlling weight, and instead gave it "little weight." **(# 11-3 at 605)**. In the Decision, the ALJ stated:

> In spite of Dr. Murillos's status as the claimant's treating physician, the undersigned cannot assign controlling weight to his opinion because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence of record. As discussed above, Dr. Murillo is not a neurologist or other neurological specialist. As evidenced by his notes that the claimant may need to go to the University, and may need an EEG, he is unlikely to have reviewed the previous EEG's and other treatment notes. This also indicates that the only objective testing Dr. Murillo has performed is the muscle biopsy. Dr. Murillo's opinion is also inconsistent with his examinations of the claimant in which the claimant denied muscle cramps, joint pain, joint swelling, presence of joint fluid, back pain, stiffness, muscle weakness, arthritis, gout, loss of strength, muscle aches, difficulty in concentration, poor balance, headaches, disturbances in coordination, numbness, tingling, brief paralysis, visual disturbances, seizures, weakness, and memory loss (exhibit 23F/2-3, 11-12, 22 [except headaches], and 31). Therefore, the undersigned gives this opinion little weight.

**(# 11-13 at 604)**.

When an ALJ rejects a treating physician's opinion, he must identify specific, good

7

reasons for weight given to the opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). This requires identification of specific evidence in the record that the ALJ found to be inconsistent with Dr. Murillo's opinion, as well as demonstration that consistent evidence was considered. *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996). As to the ALJ's first inquiry—whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques—the ALJ acknowledged that Dr. Murillo performed an objective medical test, the muscle biopsy. The record contains no evidence from any medical provider contesting the validity of a muscle biopsy test for establishing the existence of Ms. Barber's muscular dystrophy. Moreover, the ALJ accepted that diagnosis when he found at step two that Ms. Barber had the severe impairments of muscular dystrophy and a seizure disorder. (**# 11-13 at 598**). The Court now turns to the ALJ's second inquiry—whether Dr. Murillo's opinion is inconsistent with the other substantial evidence in record. Importantly, the record contains no medical opinions (other than Dr. Murillo's) that addressed Ms. Barber's RFC in light of her new diagnosis of muscular dystrophy and its possible connection to her seizure disorder. Put another way, Dr. Murillo is the only physician who examined Ms. Barber and issued updated restrictions following her muscular dystrophy diagnosis. Dr. Greenberg's opinion that there was insufficient evidence to establish ongoing seizures was rendered before Ms. Barber underwent the muscle biopsy and was eventually diagnosed with muscular dystrophy.[5] The Court finds the ALJ's Decision not to give controlling weight to Dr. Murillo's 2016 opinion was error and not supported by substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).

If, however, Dr. Murillo's 2016 opinion was not entitled to controlling weight, the ALJ's

---

[5] Dr. Greenberg's opinion was ultimately rejected by the ALJ's Decision.

Decision properly continued to weigh it pursuant to the 20 C.F.R. § 404.1527(c)(2) factors. The Decision ultimately concluded that Dr. Murillo's opinion was entitled to "little weight" and specifically pointed to exam findings where Ms. Barber denied having various symptoms that contradicted Dr. Murillo's RFC opinions. However, upon a closer review of the entire examination exhibit, which documents examinations from 2012 through 2016, there are notes from Ms. Barber's office visits with Dr. Murillo where she complains of seizures, headaches, muscle cramps, pain and/or weakness **(# 11-21 at 1109, 1118, 1120, 1121, 1138, 1143, 1152, and 1156)**. Clearly, there is conflicting evidence as to the severity of Ms. Barber's symptoms reported to Dr. Murillo over the course of her four years of treatment. However, the ALJ's Decision only referred to the specific records where Ms. Barber "denied muscle cramps, joint pain, joint swelling, presence of joint fluid, back pain, stiffness, muscle weakness, arthritis, gout, loss of strength, muscle aches, difficulty in concentration, poor balance, headaches, disturbances in coordination, numbness, tingling, brief paralysis, visual disturbances, seizures, weakness, and memory loss." **(# 11-13 at 604)**. While this Court may not reweigh the medical evidence and must defer to the ALJ's resolution of evidentiary conflicts, the ALJ's failure to identify any conflicting medical evidence or consider the longitudinal record was improper. *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (holding that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

The ALJ's Decision also offered several additional reasons to support the determination to give Dr. Murillo's 2016 opinion "little weight" in the form of conclusory statements. First, the Decision stated that Dr. Murillo is not a neurologist or specialist. While it is true that a

physician's specialty is a proper factor to consider pursuant to 20 C.F.R. § 404.1527(c)(5), here, the ALJ does not identify a conflicting opinion from a specialist or articulate a reason why Dr. Murillo's opinion should be discredited because he is not a specialist. Indeed, the Commissioner's policy states that "all licensed physicians" are "acceptable medical sources" for giving opinions on a claimant's impairments and his or her ability to function. SSR 06-03p, 2006 WL 2329939, at *2 (2006). Second, the Decision addressed Dr. Murillo's February 2015 treatment note recommending "imaging and [an] EEG" test, if Ms. Barber's seizure disorder continues in the future and speculated that it is unlikely that Dr. Murillo reviewed Ms. Barber's previous EEG tests and other treatment notes. **(# 11-21 at 1120)**. Such conclusory and vague statements are insufficient to allow this Court to engage in meaningful review. Indeed, the Decision noted and both parties agree that in this case, the EEG test is not useful . **(# 11-13 at 605; # 16 at 11; and # 17 at 4)**. Thus, without more discussion, the Court cannot say that the ALJ's speculation that Dr. Murillo did not review Ms. Barber's prior EEG tests is a valid reason for discrediting his opinion.

Finally, the Court notes that while the ALJ gave "little weight" to Dr. Murillo's RFC opinion, the ALJ's own RFC assessment was actually consistent with a portion of Dr. Murillo's opinion. Both the ALJ's RFC and Dr. Murillo's RFC included a lifting restriction of no more than 20 pounds. Because the ALJ essentially agreed with a portion of Dr. Murillo's RFC limitations, the Court finds the ALJ erred in fully discrediting Dr. Murillo's opinion "with no explanation at all as to why one part of [the] opinion was creditable and the rest was not. That is error under this circuit's case law." *Chapo v. Astrue*, 682 F.3d 1285, 1291-92 (10th Cir. 2012).

The Court finds the Decision's rejection of Dr. Murillo's 2016 opinion contravenes

applicable legal standards and that the ALJ's RFC and disability conclusions at step four and five of the sequential analysis are not supported by substantial evidence. Thus, the finding that Ms. Barber is not disabled is reversed, and the matter is remanded for reconsideration on steps three, four, and potentially five of the sequential analysis, applying the proper legal standards to the opinion of Dr. Murillo and engaging specifically in a determination of whether his 2016 medical opinion is entitled to controlling or deferential weight. *See Langley*, 373 F.3d at 1119; *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Thus, the Court need not reach Ms. Barber's other specific claim of error in the ALJ's analysis. The Court expresses no opinion as to the ultimate determination of whether Ms. Barber is or should be found to be disabled.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence through the 2016 hearing date. Judgment shall enter in favor of Ms. Barber.

Dated this 9th day of August, 2019.

BY THE COURT:

*[signature]*

Marcia S. Krieger
Senior United States District Judge